IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH G. AULISIO,

Petitioner,

v.

SUPERINTENDENT MORRIS L.
HOUSER,

Respondent.

No. 4:22-CV-01413

(Chief Judge Brann)

**MEMORANDUM OPINION**

**NOVEMBER 14, 2023**

Petitioner Joseph G. Aulisio initiated this action in September 2022 by filing

a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This is

Aulisio's second Section 2254 petition but—due to his resentencing in 2019—it is

not considered a second or successive petition.  Aulisio once again challenges his

1982 convictions for first-degree murder.  After careful consideration, the Court

must dismiss Aulisio's Section 2254 petition.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The convictions underlying the instant petition stem from events that

occurred more than 40 years ago.[1]  On July 26, 1981, two children—Christopher

Ziemba (age four) and Cheryl Ziemba (age eight)—were murdered in a vacant

---

[1]   *See Commonwealth v. Aulisio*, 522 A.2d 1075, 1077 (Pa. 1987).

house in Lackawanna County, Pennsylvania, and their bodies were discovered two days later in an abandoned strip-mining area.[2]  The children had been killed by multiple, close-range blasts from a 12-gauge shotgun.[3]

Aulisio, who was just fifteen years old at the time of the incident, was eventually arrested and charged with the children's murder.[4]  Following a jury trial, he was convicted of two counts of first-degree murder and two counts of kidnapping.[5]  In a separate proceeding, he was sentenced to death in connection with the murder convictions.[6]

Aulisio appealed directly to the Supreme Court of Pennsylvania.[7]  The court reversed the convictions for kidnapping, vacated the death sentence (as there was no longer a basis for the murders being committed during the perpetration of a felony, one of the two aggravating circumstances found by the jury to impose the death penalty), and remanded to the trial court to resentence Aulisio to life imprisonment.[8]  On remand, the sentencing court entered a sentence of two consecutive terms of life imprisonment for the first-degree murder convictions.[9]  Aulisio again appealed, challenging the consecutive life sentences, but the Superior

---

[2]    *See id.*
[3]    *See id.*
[4]    *See id.*
[5]    *See id.*
[6]    *See id.*
[7]    *See* PA. R. APP. P. 1941 & Note; 42 PA. CONS. STAT. §§ 722(4), 9711(h)(1).
[8]    *See Aulisio*, 522 A.2d at 1079-80.
[9]    *See Commonwealth v. Aulisio*, 541 A.2d 784, 785 (Pa. Super. Ct. 1988).

Court of Pennsylvania affirmed the sentences.[10]

Approximately nine years later, Aulisio filed his first petition under Pennsylvania's Post Conviction Relief Act (PCRA).[11]  The PCRA court denied that petition, and the Superior Court affirmed the denial in February 1999.[12]  The Supreme Court of Pennsylvania subsequently denied a petition for allowance of appeal.[13]

Aulisio then filed his first petition under 28 U.S.C. § 2254 in this Court in August 2000.[14]  In it, Aulisio raised numerous claims involving alleged ineffective assistance of counsel.[15]  In 2003, the Court denied Aulisio's Section 2254 petition and declined to issue a certificate of appealability.[16]  The following year, the United States Court of Appeals for the Third Circuit likewise denied a certificate of appealability.[17]  It does not appear that Aulisio filed a petition for a writ of *certiorari* with the Supreme Court of the United States.

In July 2012, following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012),[18] Aulisio filed a second PCRA petition.

---

[10]   *See id.* at 785, 786.
[11]   42 PA. CONS. STAT. § 9541 *et seq.*
[12]   *See Commonwealth v. Aulisio*, 737 A.2d 802 (Pa. Super. Ct. 1999) (table).
[13]   *See Commonwealth v. Aulisio*, 742 A.2d 670 (Pa. 1999) (table).
[14]   *See Aulisio v. Chesney*, No. 3:00-cv-1585, Doc. 1 (M.D. Pa. Sept. 7, 2000).
[15]   *See id.*, Doc. 21 at 6.
[16]   *See id.*, Doc. 21 at 36.
[17]   *See id.*, Doc. 28.
[18]   In *Miller v. Alabama*, the Supreme Court held that the imposition of a sentence of life without parole for juvenile offenders violates the Eighth Amendment to the United States Constitution.

Eventually, Aulisio was successful in vacating his consecutive life sentences and was resentenced in 2019 to two consecutive terms of 30 years' to life imprisonment.[19] Aulisio again appealed that sentence, but the Superior Court affirmed the sentence on appeal.[20] In May 2022, the Supreme Court of Pennsylvania denied Aulisio's petition for allowance of appeal.[21]

Rather than seeking post-conviction relief in state court, Aulisio applied to the Third Circuit for authorization to file a second or successive Section 2254 petition.[22] On August 30, 2022, the Third Circuit denied that application as "unnecessary," determining that, because Aulisio had been resentenced in 2019, he could file a Section 2254 petition challenging his state conviction without that petition being deemed "second or successive."[23] The panel added, however, that "[i]n reaching this determination, we express no opinion as to the merits; we have determined only that the proposed § 2254 petition included in Aulisio's § 2244 application is not second or successive for purposes of § 2244."[24]

---

*Miller*, 567 U.S. at 465. In 2016, that decision was held to apply retroactively. *See Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

[19] See *Commonwealth v. Aulisio*, 253 A.3d 338, 340 (Pa. Super. Ct. 2021).

[20] *See id.* at 340, 346.

[21] *See Commonwealth v. Aulisio*, 279 A.3d 35 (Pa. 2022) (table).

[22] *See* 28 U.S.C. § 2244(b)(3)(A).

[23] *See In re: Aulisio*, No. 22-2350, Doc. 6 (3d Cir. Aug. 30, 2022).

[24] *Id.*

Aulisio lodged his Section 2254 petition in this Court less than a week later.[25]  He then amended that petition the following month.[26]  Respondent filed his response[27] to the amended petition, Aulisio timely filed a traverse,[28] and Respondent—with the Court's permission—filed a surreply.[29]  Aulisio's amended Section 2254 petition, therefore, is now fully briefed and ripe for disposition.[30]

## II.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[31] mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief.[32]  An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits.[33]

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of

---

[25]  *See generally* Doc. 1.
[26]  *See generally* Doc. 8.
[27]  Docs. 13, 14.
[28]  Doc. 15.
[29]  Doc. 19.
[30]  Aulisio subsequently filed several "Declarations" (Docs. 17, 21, 22) after the briefing in this action was closed and without leave of court.  The Court will not consider any new arguments or issues asserted therein, as they are waived by failing to be raised in the initial Section 2254 petition, the amended Section 2254 petition, Aulisio's memoranda of law, or any subsequent briefing.
[31]  28 U.S.C. §§ 2241-2254.
[32]  *Id.* § 2254(b)(1)(A).
[33]  *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013).

procedural default may come into play."[34]  Generally, if a prisoner has

procedurally defaulted on a claim by failing to raise it in state-court proceedings, a

federal habeas court will not review the merits of the claim, even one that

implicates constitutional concerns.[35]

A few limited exceptions to this rule exist.  One exception is that "[a]

prisoner may obtain federal review of a defaulted claim by showing cause for the

default and prejudice from a violation of federal law."[36]  "Cause for a procedural

default exists where something *external* to the petitioner, something that cannot

fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's

procedural rule."[37]  To establish prejudice, a petitioner must show not merely that

there were errors that created a possibility of prejudice, but that they "worked to

his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions."[38]  If cause and prejudice are established, the federal

court reviews the claim *de novo* "because the state court did not consider the claim

on the merits."[39]

---

[34]   *Carpenter*, 296 F.3d at 146 (citations omitted).
[35]   *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)).
[36]   *Id.* at 10 (citing *Coleman*, 501 U.S. at 750).
[37]   *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted).
[38]   *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).
[39]   *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom. Gilmore v. Bey*, 138 S. Ct. 740 (2018) (mem.) (citation omitted).

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'"[40]  To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence.[41]

### III.   DISCUSSION

The gravamen of Aulisio's amended Section 2254 petition is that one of the Commonwealth's witnesses—Diane Ziemba, the mother of the victims—allegedly testified falsely during Aulisio's trial and the prosecution failed to correct that testimony.[42]  Aulisio contends that this false testimony tainted his entire trial and constitutes a due process violation that demands reversal of his convictions.

The testimony at issue involves what Diane Ziemba claimed she had witnessed on the day of the murders from the kitchen window of her family's second-floor apartment, the last time she saw her children alive.  Diane testified, "The last time I saw them, Christopher was entering the unfinished house on the Aulisio property.  All I saw was the back of his head before he went into the house.  Cheryl was a few feet behind him, and right in back of her was Joseph Aulisio."[43]

Aulisio contends that this trial testimony was false.  He asserts that defense witness Linda Jo Jefferys—Diane Ziemba's sister-in-law—testified that Diane had

---

[40]  *Carpenter*, 296 F.3d at 146 (quoting *Coleman*, 501 U.S. at 750).
[41]  *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).
[42]  *See* Doc. 8 at 2-4, 6-7; Doc. 8-2.
[43]  Doc. 14-2 at 10-11, 13-14, Direct Testimony of Diane Ziemba pp. 364-65, 367-68.

told her on the night the children went missing that she last saw them behind her house playing in an empty trailer lot adjacent to the Aulisio property.[44]  Aulisio further maintains that it is physically impossible to see the rear door or doorway of the unfinished house on the Aulisio property (where Diane testified she saw the children and Aulisio entering the house) from the Ziembas' kitchen window, and that defense photographs taken at the scene "are incontrovertible proof" that Diane's testimony was "against the laws of nature" and categorically untrue.[45]  He argues that the prosecutor failed to correct this false testimony and instead used it to obtain a conviction, thereby violating Aulisio's due process rights.[46]

Aulisio concedes that this due process claim is procedurally defaulted.[47]  He also acknowledges that he is not presenting any new evidence.[48]  He does not establish (or even mention) cause or prejudice that would excuse his default; rather, he maintains that he can garner federal review of his due process claim because he can show a "miscarriage of justice."[49]  The Court disagrees.

The Supreme Court of the United States has recognized that a credible showing of actual innocence may provide a gateway for a petitioner to pursue the merits of a Section 2254 petition despite expiration of the AEDPA's statute of

---

[44]  *See* Doc. 8 at 3; Doc. 14-2 at 48, Direct Testimony of Linda Jo Jefferys pp. 1966, 1967.
[45]  *See* Doc. 8 at 3.
[46]  *See id.* at 6-7.
[47]  *See* Doc. 8 at 1 ¶ 5 ("None of the instant claims have ever been raised or adjudicated and are waived under state law [.]").
[48]  *See id.* at 1-2.
[49]  *See id.* at 1 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

limitations or procedural default of a claim.[50]  Such actual-innocence claims,

however, are "demanding"[51] and "rarely successful."[52]  Circumvention of the

limitations period or excusal of procedural default is only possible when a

petitioner can show "new reliable evidence" of actual innocence and that, in light

of this new evidence, "no juror, acting reasonably, would have voted to find [the

petitioner] guilty beyond a reasonable doubt."[53]  This standard "does not require

absolute certainty of guilt or innocence, but it is demanding and will be satisfied

only in rare and extraordinary cases where the evidence of innocence is so strong

that it undermines confidence in the trial's outcome."[54]

　　Aulisio cannot meet this stringent standard.  First, and most importantly,

Aulisio is not asserting any new evidence, and he admits as much.  Aulisio is

instead claiming that one of the Commonwealth's key witnesses lied at trial and

the prosecution failed to correct that purportedly false testimony.  This claim,

however, has been available to Aulisio for more than four decades.  What Diane

Ziemba could or could not see from her kitchen window was a critical issue during

the trial, so much so that defense counsel hired a photographer to take pictures of

---

50　*See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citing *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006)).

51　*House*, 547 U.S. at 538.

52　*Schlup*, 513 U.S. at 324.

53　*Howell v. Superintendent Albion SCI*, 978 F.3d 54, 59 (3d Cir. 2020) (quoting *Satterfield v. Dist. Attorney of Phila.*, 872 F.3d 152, 163 (3d Cir. 2017) (quoting *McQuiggin*, 569 U.S. at 386)).

54　*Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021).

the area in an attempt to impeach Diane Ziemba's testimony.  It is difficult to

conceive why Aulisio is raising this claim—which he contends is a miscarriage of

justice—for the first time approximately *40 years* after his trial.

Aulisio provides no explanation or excuse in his petition or briefing for this

egregious delay.  Yet a critical consideration in the analysis of a *McQuiggin* or

*Schlup* actual-innocence claim is whether the petitioner was diligent in presenting

his claim.  As the United States Supreme Court has admonished, "[u]nexplained

delay in presenting new evidence bears on the determination whether the petitioner

has made the requisite showing [of innocence]."[55]

Furthermore, the Supreme Court of the United States has directly spoken to

the importance of new evidence in the miscarriage-of-justice analysis:

> Without any new evidence of innocence, even the existence of a
> concededly meritorious constitutional violation *is not in itself sufficient
> to establish a miscarriage of justice* that would allow a habeas court to
> reach the merits of a barred claim.  However, if a petitioner . . . presents
> evidence of innocence so strong that a court cannot have confidence in
> the outcome of the trial unless the court is also satisfied that the trial
> was free of nonharmless constitutional error, the petitioner should be
> allowed to pass through the gateway and argue the merits of his
> underlying claims.[56]

It is true that the Third Circuit has held that, under certain rare circumstances, the

absence of new evidence "is not necessarily fatal to an argument that a petitioner is

---

[55]  *McQuiggin*, 569 U.S. at 399; *see also Schlup*, 513 U.S. at 332 (explaining that a court "may
consider how the timing of the submission" bears on the reliability of evidence); *Howell*, 978
F.3d at 60 (citing *Reeves v. Fayette SCI*, 897 F.3d 154, 161 (3d Cir. 2018)).
[56]  *Schlup*, 513 U.S. at 316 (emphasis supplied).

actually innocent."[57]  But Aulisio's case is not one of those circumstances.  Even

assuming the at-issue testimony of Diane Ziemba was false, that alone would not

establish that Aulisio is actually innocent of the murders.  On the contrary, the

record is replete with additional material, inculpatory evidence.

The Supreme Court of Pennsylvania noted the following evidence—

unrelated to Diane Ziemba's testimony—tending to establish Aulisio's guilt:

> It was also shown that, during the week preceding the murders,
> [Aulisio] had a .12 gauge shotgun, and ammunition, in his bedroom in
> a residential trailer near the unfinished house. After the murders, the
> shotgun was never again found, but spent .12 gauge shotgun shells were
> discovered under [Aulisio]'s bed in the trailer. A crime laboratory
> determined that one of the shells had traces of blood upon it, though the
> traces were too small to permit confirmation that the blood was of
> human origin.
>
> Two individuals, who had been unloading brush from a truck in
> a nearby strip mine area on the day the children were
> murdered, *positively identified* [Aulisio] as the person they had seen,
> around 4:45 p.m. that day, driving a small white car through the
> desolate and rough terrain where the children's bodies were later found.
> The car was subsequently identified as belonging to [Aulisio]'s family,
> and physical damage to the underside of the car, consistent with its
> having been driven over rough terrain, was shown to have occurred on
> the day in question.  [Aulisio] made a number of grossly inconsistent
> statements as to the manner in which the underside of the car had been
> damaged.

---

[57]  *Cristin*, 281 F.3d at 420 (citing *United States v. Garth*, 188 F.3d 99, 110 n.13 (3d Cir. 1999)).
The panel in *Cristin* went on to explain that, in *United States v. Garth*, the unusual
circumstances were that "the Supreme Court had reinterpreted the statute under which the
petitioner was convicted to require more conduct than was allegedly committed.  As such, there
was a colorable argument that he was actually innocent of the crime.  In those circumstances,
it was not a question of what new evidence of innocence the petitioner could present, but
whether the evidence currently in the record was sufficient to convict."  *Id.* at 421.  As
explained herein, Aulisio's circumstances are entirely different than those presented in *Garth*.

It was established that the children's bodies had been transported to the strip mining area in certain pieces of blood-stained blue and white carpeting that were found near the bodies. The carpet pieces were identified as having been in the possession of [Aulisio] prior to the crime. Fibers from the carpeting were found in the trunk of the car that [Aulisio] had been seen driving in the strip mining area where the bodies were dumped. Traces of human blood were found on a can in the trunk of [Aulisio]'s car. In addition, pieces of a broken glass ornament were found on the body of one of the children, as well as in the trunk of [Aulisio]'s car and in the bedroom closet area where the murders took place.

On July 29, 1981, three days after the murders occurred, [Aulisio] issued a tearful statement to police in which, although he did not confess to the killings, he admitted being at the crime scene at 6:00 p.m. on the day of the murders. He stated that, at 6:00 p.m. that day, the bodies of the children were no longer present in the house. That statement was consistent with other evidence indicating that [Aulisio] had disposed of the bodies around 4:45 p.m. that day. [Aulisio]'s statement also indicated that a .12 gauge shotgun was present at the crime scene. The significance of that statement lies in the fact that the shotgun has never been located in the course of the murder investigation, and, further, in that [Aulisio] implicated the exact murder weapon, without relying upon the autopsy's determination that a .12 gauge shotgun had in fact been used to commit the crime. Finally, and most significantly, [Aulisio] admitted in his statement that he had cleaned up the gruesome murder scene, including the blood, etc., because he believed he would "get in trouble" if he failed to do so.[58]

Aulisio urges the Court to ignore any other evidence of guilt and focus solely on what he perceives to be a due process violation (*i.e.*, the false testimony and the prosecution's handling of it).[59] But that is putting the cart before the horse. Aulisio never raised this due process claim in state court. The claim, therefore, is

---

[58]  *Aulisio*, 522 A.2d at 1077-78.
[59]  *See, e.g.*, Doc. 8 at 4 ¶¶ 13, 14.

procedurally defaulted, and Aulisio admits as much.  The only way this Court

could reach the merits of Aulisio's defaulted constitutional claim is if he presented

new evidence establishing actual innocence or if he could show that his case falls

into one of the exceedingly rare exceptions where new evidence is not necessary.

Aulisio has done neither.

In sum, Aulisio has not made the requisite showing to establish actual

innocence under *McQuiggin* and *Schlup*.  This Court, therefore, cannot consider

his procedurally defaulted due process claim[60] and will dismiss his amended

Section 2254 petition.[61]

## IV.   CONCLUSION

For the foregoing reasons, the Court must dismiss Aulisio's petition for a

writ of habeas corpus under 28 U.S.C. § 2254.  The Court likewise declines to

issue a certificate of appealability, as Aulisio has failed to make a substantial

showing of the denial of a constitutional right,[62] or that "jurists of reason would

---

[60]   The parties also discuss what appears to be an additional "false testimony" claim raised at the end of Aulisio's amended petition regarding the eyewitness sightings of Aulisio near the scene of where the victims' bodies were discovered. *See* Doc. 8 at 6 ¶ 8.  This due process claim, to the extent Aulisio is attempting to assert an additional constitutional violation, is likewise procedurally defaulted and unreviewable for the reasons stated *supra*.

[61]   *See Schlup*, 513 U.S. at 316.

[62]   28 U.S.C. § 2253(c)(2).

find it debatable" whether this Court's procedural ruling is correct.[63]  An

appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[63]   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).